THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID MICHAEL KINNEY, Defendant-Appellee.

Fourth District   No. 4—88—0948

Opinion filed October 5, 1989.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE LUND delivered the opinion of the court:

On October 9, 1988, following an arrest for a traffic violation, the vehicle of defendant David Kinney was towed, with an inventory search being conducted. A handgun was found in the glove compartment, which resulted in defendant being charged with the offense of unlawful use of weapons. (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.) On December 9, the circuit court of Macon County granted defendant's motion to suppress. The State appeals.

Defendant's testimony was that on October 9 at 1:30 a.m., he was stopped by Officer James Stenger for a speeding violation he did not commit. Stenger asked him, since he had a Florida license, to sign the ticket. Defendant asked one question, and Stenger told him that he would be taken to the station to post a cash bail. At that point, he was handcuffed and put in a police car. The police searched and towed his car, finding a gun, according to defendant, in the locked glove

compartment. At no time did the police ask him if he wanted his car inventoried or towed.

Stenger's testimony was that he stopped defendant for speeding and, after telling defendant he would do so, commenced writing a ticket. While he did so, he stayed in his police car. Several times, defendant came back to his car and yelled at him. When asked to sign the promise to comply on his ticket, defendant refused, saying they could take him to the jail because he was not posting bond. At this time, due to his belligerent attitude, defendant was handcuffed and taken to the station to post a cash bond. Stenger had defendant's car towed. It is departmental policy that a routine inventory be conducted on the contents of a vehicle and of any damage it may sustain prior to the vehicle's being towed. During this inventory, according to Stenger, the gun was found in the unlocked glove compartment. Officer Doug Taylor's testimony corroborated Stenger's concerning defendant's refusal to sign his ticket.

The court granted the motion to suppress, though it is unclear on what grounds this decision was based. In announcing its decision, the court stated:

> "While a Police Department has or can have a procedure for an inventory search, every inventory search is restricted, if you want to, as far as necessity and extent.
>
> The arresting officer in this case indicated, one; he had no probable cause to believe anything illegal was in the car.
>
> There is no evidence to indicate that the Officer was in fear of anything. There is nothing in here to indicate that the defendant could not drive the automobile to the Police Department, as we all know occurs probably every shift of every day. In fact, there was no reason to tow the car. There was no reason to inventory the car.
>
> It is apparent, and I don't know what the nature of it is, but there are other, at least, unstated problems.
>
>       * * *
>
> Here you have an individual who was given a traffic ticket and, if he chooses to post the bond, then he can post the bond. And the Officer, himself, said it was only after that that I arrested him. For what?
>
> Evidence and arguments heard. Motion To Suppress is allowed."

Thus, it appears the court concluded: (1) the officer, by taking defendant into custody, committed unlawful arrest; and (2) the inventory search was improper.

■ The standard for appellate review of a decision on a motion to suppress is whether the findings of the trial court were manifestly erroneous. *People v. Nogel* (1985), 137 Ill. App. 3d 392, 396, 484 N.E.2d 516, 519.

■■ Initially, we observe the court was mistaken concerning its characterization of defendant's arrest. Admittedly, the officers testified that they placed defendant under arrest when he was handcuffed and transferred to the station to post bond after he refused to sign his ticket. However, that is not when the arrest occurred. A key element in determining if a subject is under arrest is whether there is an actual restraint of the subject, or if he has submitted to custody. (*People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 694, 402 N.E.2d 915, 921.) Another important element of a valid arrest is that the evidence must show the officer intended to effect the arrest, and the defendant so understood. (See *People v. Wipfler* (1977), 68 Ill. 2d 158, 165, 368 N.E.2d 870, 872.) In the case at bar, it is clear that Stenger stopped defendant's vehicle, intending to issue defendant a citation for a violation of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 1—100 *et seq.*), and that defendant understood that. This was when the arrest occurred.

This determination is supported by the fact that once Stenger had determined to issue a traffic citation, defendant was required to post bail. (See Ill. Rev. Stat. 1987, ch. 95½, par. 6—306.4; 107 Ill. 2d R. 526.) The posting of bail is a concomitant obligation to an arrest. Thus, it is evident defendant was under arrest at the time Stenger advised him a ticket would be issued, and the difficulties afterwards involved the posting of the required bail.

■ Defendant, as an out-of-State licensed driver from a State belonging to the nonresident violator compact (Ill. Rev. Stat. 1987, ch. 95½, par. 6—800 *et seq.*), had two options after his arrest. These were to be brought without unnecessary delay before a court of jurisdiction, or to execute a written promise to comply. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—306.4.) Once he refused to sign the promise to comply, it became necessary to provide bail as provided in Supreme Court Rules 526 and 553 (107 Ill. 2d Rules 526, 553), or wait incarcerated until a judge became available, which would have been, due to the hour, the next day at the earliest. In either case, since it is required that a cash bail be posted at a government facility (see 107 Ill. 2d R. 553(a)), it was necessary defendant be transported to the police station.

The court seems to suggest that this could have been accomplished by allowing defendant to drive his vehicle to the jail following the police car, which it believed is customary. We have no doubt that

often, as a courtesy, this is allowed. However, the evidence establishes that a heated confrontation was occurring. Even defendant acknowledged they had words. In such a case, it is not unreasonable that the police would choose to physically transport defendant themselves, rather than run the risk of defendant fleeing or other problems. The point to remember is that, even though defendant was charged with a "minor" offense, he was still under arrest and had to post bail. We find no difficulty with the police decision.

■ Once the police decided to do this, they were faced with the problem of what to do with defendant's car. It was 2 a.m., and there was nobody to take control of it. Accordingly, the car was towed.

Stenger testified it was police departmental policy that when a car was to be towed, the officer perform a routine inventory of the contents of the vehicle and any damage to it. During this inventory, the gun was found in the glove compartment. There is a dispute concerning whether the glove compartment was locked. However, pursuant to *Colorado v. Bertine* (1987), 479 U.S. 367, 93 L. Ed. 2d 739, 107 S. Ct. 738, that is immaterial.

In *Bertine,* the Court determined that during an inventory search, the police officers could open closed containers. The only requirement is that the police be acting pursuant to standard procedures in performing the inventory search. The Court noted that once the vehicle is seized, the police become responsible for the vehicle and its contents. By determining the precise nature of the property, the Court observed that the police would be helped against claims of theft, vandalism, or negligence. Finally, the Court noted that, even if other arrangements for the vehicle's security could be made, such as storage in a secure lot or arrangements made by the driver, this did not invalidate the inventory search:

> "And while giving Bertine an opportunity to make alternative arrangements would undoubtedly have been possible, we said in *Lafayette*:
>
>> '[T]he real question is not what "could have been achieved," but whether the Fourth Amendment *requires* such steps ***.
>>
>> 'The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' [Citation.] [Emphasis in original.]
>
> [Citations.] We conclude that here, as in *Lafayette*, reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though

courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine*, 479 U.S. at 373-74, 93 L. Ed. 2d at 747, 107 S. Ct. at 742.

In the present case, the uncontroverted evidence establishes that Stenger performed the search pursuant to departmental policy. While the evidence on this point was not as clear as it could have been, we find it to be sufficient. Thus, even if the glove compartment was locked, the search, pursuant to *Bertine*, was valid.

Reversed and remanded.

McCULLOUGH, P.J., and SPITZ, J., concur.