Roy E. FORD, Plaintiff–Appellant,

v.

Curtis WILSON, Defendant–Appellee.

No. 95–2662.

United States Court of Appeals, Seventh Circuit.

Submitted April 25, 1996.

Decided July 25, 1996.

Roy E. Ford (submitted on briefs), Rockford, IL, pro se.

Joshua G. Vincent, Hinshaw & Culbertson, Chicago, IL, Thomas H. Boswell, John A. Sandberg, John E. Prochaska, and Gregory T. Snyder, Hinshaw & Culbertson, Rockford, IL, for defendant–appellee.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

POSNER, Chief Judge.

Roy Ford brought suit under 42 U.S.C. § 1983 against a police officer who had arrested him after a traffic stop. The district judge granted summary judgment for the defendant, noting that Ford had not submitted an affidavit or equivalent evidence in opposition to the defendant's affidavit. But he had. For he had verified his complaint, and the complaint contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion. Rule 56(e) of the Federal Rules of Civil Procedure provides that "when a motion for summary judgment is made and supported as provided in this rule, an ad-

verse party may not rest upon the mere allegations or denials of the ... party's pleading." See also Advisory Committee's Note to 1963 Amendment to Subdivision (e). But Ford did not rest upon "mere allegations or denials" in his complaint. By declaring under penalty of perjury that the complaint was true, and by signing it, he converted the complaint, or rather those factual assertions in the complaint that complied with the requirements for affidavits specified in the rule—that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein," Fed. R.Civ.P. 56(e)—into an affidavit. That it was not called "affidavit" is of no moment, *Northwestern Nat'l Ins. Co. v. Corley*, 503 F.2d 224, 231 (7th Cir.1974); nor that much contained within it did not comply with the stringent requirements of the rule, for that is true of many so-called "affidavits" submitted in support of or opposition to summary judgment. Because the complaint was verified, 28 U.S.C. § 1746, as of course an affidavit must be, *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir.1985), those parts of the complaint that satisfied the requirements that we quoted above were affidavit material. Every circuit to consider the issue has so held. See, e.g., *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.1995); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994). We have implied our agreement with these courts, see, e.g., *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 355 n. 9 (7th Cir.1992); *Enquip, Inc. v. Smith–McDonald Corp.*, 655 F.2d 115, 119 (7th Cir.1981), and today make our agreement explicit.

■ We do not mean to commend the practice. The federal rules envisage the submission of evidentiary material in response to a motion for summary judgment as a means of sharpening the issues, so that the judge can determine just what if anything must be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 875, 883 (S.D.N.Y. 1994). For the plaintiff, instead of doing this, just to point to factual assertions in his

verified complaint is bound to make the identification of genuine issues of material fact difficult, complicating the work of the judge. But we do not think that such a departure from proper practice is so egregious or such a burden on the court as to warrant the fell sanction of dismissal of the suit, *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir.1993); *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir.1992), especially when the plaintiff does not have a lawyer yet is not warned.

■ The judge's oversight, however, is inconsequential. The factual allegations in the complaint that are based on Mr. Ford's personal knowledge and must therefore be taken as true in considering whether summary judgment was properly granted amount only to the claim that although he was driving in a perfectly lawful fashion Officer Wilson stopped him. They got into an altercation that led to Wilson's arresting Ford for obstructing justice, though the charge was ultimately dismissed. Ford argues that he cannot be arrested for obstructing justice if there was no basis for stopping him in the first place, but that is obviously wrong. There are legal remedies for being stopped by the police without any basis. Physical resistance, here in the form of refusing to sign the "I-bond" (individual bond, a form of bail that a driver who has been ticketed for a traffic offense must post, Ill. S.Ct. R. 502(h), 553(d); *People v. Kinney*, 189 Ill.App.3d 952, 137 Ill.Dec. 484, 486, 546 N.E.2d 238, 240 (1989)), is not one of them, and it is not constitutionally protected. Cf. *Ryan v. County of DuPage*, 45 F.3d 1090, 1094 (7th Cir.1995). Refusing to sign a piece of paper may not be what one ordinarily thinks of as physical resistance. But under Illinois law, without the signature the driver is not allowed to continue on his way; he is under arrest. Indeed, under Illinois law the arrest takes place when the officer informs the driver that he is going to issue him a ticket. Ill. S.Ct. R. 526(a); *People v. Stewart*, 242 Ill. App.3d 599, 182 Ill.Dec. 773, 778, 610 N.E.2d 197, 202 (1993); *People v. Kinney, supra*, 137 Ill.Dec. at 486, 546 N.E.2d at 240. Signing the I-bond is the condition of being released

from the officer's custody. It is federal constitutional law, not Illinois state law, that distinguishes between a mere stop and a full-fledged arrest.

█ Although the arrest of Ford thus was proper, the initial stop is separable from the arrest, and a stop of a vehicle by a police officer, though not an arrest within the meaning that the courts have impressed on the Fourth Amendment, is a "seizure" within the meaning of that amendment, *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979), and will not pass constitutional muster unless based on articulable suspicion that a traffic offense has been committed. We have not found a case, however, in which someone stopped for a simple traffic violation obtained damages in a federal constitutional tort suit on the ground that the officer did not have an articulable suspicion of a violation. (*Prouse,* for example, was a criminal case.) Maybe this is just because the damages would be too slight to support the expense of suing, but we hope not; we hope that the judicially engineered expansion of constitutional law from its modest textual base has not reached the point where every one of the millions of traffic stops of speeders and other traffic offenders made every year becomes a candidate for a federal suit. There are such things as *de minimis* deprivations of liberty, *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (paddling a schoolchild unless "appreciable physical pain" is inflicted); maybe a routine traffic stop is one of them. *Parker v. Strong,* 717 F.Supp. 767, 771 (W.D.Okla.1989). *United States v. Jacobsen,* 466 U.S. 109, 125, 104 S.Ct. 1652, 1662–63, 80 L.Ed.2d 85 (1984), extends the *de minimis* principle to seizures of property challenged under the Fourth Amendment and—now we are getting very warm—*Artes-Roy v. City of Aspen,* 31 F.3d 958, 962–63 (10th Cir.1994), extends it to seizures of the person; that was a case where a building inspector stepped into the entry way of the plaintiff's house without the plaintiff's consent. (On the general scope of the *de minimis* principle in constitutional tort law, see *Hessel v. O'Hearn,* 977 F.2d 299, 302–304 (7th Cir.1992); cf. *Glatt v. Chicago Park District,* 87 F.3d 190, 193 (7th Cir.1996).)

Unlike an arrest, see, e.g., *Williams v. Boles,* 841 F.2d 181, 183 (7th Cir.1988), a routine traffic stop is an ordinary incident of driving. But we need not pursue the issue further, as we do not understand Ford to be seeking damages merely for being stopped without (as he believes) adequate reason.

█ Ford has another theory of liability, however—that he is the victim of racial discrimination. Slights lose their trivial character when the motivation is racial hostility. Ford is black and claims that Wilson stopped him only because of his race and that it is the custom and practice of Wilson's police department to stop and detain people, without justification, if they are black. Neither of these assertions is an allegation of fact within the personal knowledge of Ford. He cannot tell what Wilson's motive is unless Wilson said something indicating a racial motive. Ford does not allege that he did. And while he can allege, he cannot testify about, a custom of Wilson's police department. The existence of a custom, since it is by definition not an enactment or promulgation of a law or policy, can be established only by showing a pattern of behavior. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985); *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995); *Calusinski v. Kruger,* 24 F.3d 931, 936 (7th Cir.1994); *Navarro v. Block,* 72 F.3d 712, 714 (9th Cir.1996); *McGautha v. Jackson County,* 36 F.3d 53, 56–57 (8th Cir.1994). A pattern is unlikely to be within the personal knowledge of an outsider to the organization alleged to follow the pattern. But in any event the complaint (which remember we are treating as an affidavit) contains no suggestion of a fact, indicative of such a pattern, that might be within Ford's personal knowledge.

█ We do not think, by analogy to the *McDonnell–Douglas* framework for deciding motions for summary judgment in employment discrimination cases, that the combination of an arbitrary stop (as we must assume for purposes of the appeal that Ford's stop by Wilson was) with a difference in race between the person stopped and the officer establishes a prima facie case of racial dis-

crimination. Otherwise any time a black arrested a white, or a white arrested a black, the person arrested could, by testifying that the arrest had been groundless, obtain a trial in federal court under 42 U.S.C. § 1983. We used the example of an arrest but the principle would apply equally to traffic stops—and again the specter of millions of new claims of constitutional infringements looms.

We do not think, finally, that Ford can appeal to the principle of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), that an unrepresented party (Ford was and is unrepresented) must be notified of the consequences of failing to respond to evidence presented in support of his opponent's motion for summary judgment with evidence of his own—must be told, in short, that he cannot rest on his pleadings. Ford did present evidence, in the form of his verified complaint. We do not think that *Lewis* should be read to require the district judge to explain to the uncounseled plaintiff exactly how much and what kind of evidence he must present to withstand summary judgment.

AFFIRMED.