**William McNEIL, Plaintiff,**

v.

**Sharon REDMAN, Defendant.**

**No. 95–2147.**

United States District Court, C.D. Illinois.

Sept. 28, 1998.

William McNeil, Pontiac, IL, pro se.

James P. Doran, Office of Atty. Gen., Chicago, IL, for defendant.

### *ORDER*

McCUSKEY, District Judge.

The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendant, a nurse at the Danville Correctional Center, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs and by discriminating against him on the basis of his race. More specifically, the plaintiff alleges that the defendant intentionally denied him access to needed medical care on October 11, 1993, because the plaintiff is black.[1] This matter is before the court for consideration of the defendant's renewed motion for summary judgment. For the reasons stated in this order, the motion will be allowed.

---

1. By Order of March 5, 1998, the court granted summary judgment in favor of all other defendants on all other claims.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992).

### FACTS

The plaintiff is a state prisoner, confined at the Danville Correctional Center at all times relevant to this action. [The plaintiff is cur-rently incarcerated at the Pontiac Correctional Center.] The defendant Sharon Redman was the prison's director of nursing.

The following facts are uncontested for purposes of this motion:[2] At the time of the events giving rise to the complaint, the plaintiff was on the prison's "chronically ill" list, principally due to hypertension (high blood pressure), asthma, emphysema, hepatitis, and heart problems.[3] Because the plaintiff was on the chronically ill list, he was permitted to report to a lieutenant whenever he felt the need to see the medical staff. The plaintiff has received extensive medical treatment since his placement in the custody of the Illinois Department of Corrections. His medical records consist of over two thousand pages.

The plaintiff was familiar with sick call procedures at the Danville Correctional Center. When an inmate reports to the health care unit, he is first examined by a nurse, who determines whether a doctor needs to see the patient immediately, or whether he should be placed on the "sick call line." The plaintiff is not required to pay for his medical care.

On October 11, 1993, at about 8:30 a.m., the plaintiff went to the health care unit complaining of chest pains and liver problems after vomiting and urinating "all night."

Redman directed a licensed practical nurse (Douglas, not a defendant) to make an initial assessment and report her findings to Redman.

Both Redman and Douglas are white. The plaintiff is black. Prior to the date in question, the plaintiff had never had any contact with Redman or Douglas.

---

**2.** The court has incorporated allegations from the fourth amended complaint. A verified complaint may serve as an affidavit. *See, e.g., Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1110, 137 L.Ed.2d 311 (1997).

**3.** In his response to the defendant's motion, the plaintiff asserts that he "never said in any of his pleadings" that he is on the chronically ill list. But that fact is taken from the plaintiff's own deposition testimony. *Tr.* at p. 18. Unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir.1985). Furthermore, a party may not create issues of credibility by contradicting his own earlier testimony. *Essick v. Yellow Freight Systems, Inc.* 965 F.2d 334, 335 (7th Cir.1992), relying on *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985). Regardless, the court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir.1988).

Douglas learned that the plaintiff's chest pains had gone away after he took two nitroglycerin tablets. But the plaintiff's blood pressure was elevated; moreover, he said that his urine was unusually dark, and that he was experiencing kidney and bladder discomfort. The plaintiff demanded that he be seen by a urologist or an internist. Douglas reported to Redman that the plaintiff was very upset and behaving in a threatening manner.

Redman told Douglas to obtain a urine specimen from the plaintiff so that they could perform a chemical analysis. She also told Douglas to re-check the plaintiff's blood pressure in ten to fifteen minutes. Because the plaintiff had complained of chest pain, Redman additionally intended to do an EKG on the plaintiff after she finished "Medline" (presumably, dispensing morning medication to inmates). Redman believed that the plaintiff could wait for the EKG because he was "in no acute distress." His pulse was in the normal range, his respiration was unlabored, and the chest pain had been relieved by the nitroglycerin.

Redman overheard the plaintiff speaking to Douglas in a "loud, intimidating voice." After listening a while, she intervened, asking what they could do to help the plaintiff.

The plaintiff responded in a loud, insolent manner, making remarks along the lines of, "Lady, you can't help me here. You don't even have a doctor here."

Redman explained to the plaintiff what the nursing staff intended to do. When she mentioned the urine sample, the plaintiff started yelling, "I've been pissing all night and now you want me to piss in here."

Redman suggested that the plaintiff drink some water and calm down; she told him that they would check his blood pressure again and do an EKG after he had sat quietly for ten minutes.

Redman and Douglas returned to the nurses' station to give the plaintiff time to calm down, but moments later, the plaintiff approached the desk angrily. In a loud voice, the plaintiff made remarks such as, "This is bullshit!" "I'm going to write you up and win the case." "You can't tell me, I used to

be a nurse and work in a lab." "You don't have the facilities here I need." "I need a urologist and an internist." "I'm 52 years old, don't f___ with me, go out in the street and find a 52 year-old boy to f___ with."

The plaintiff refused to listen to Redman's explanation that they needed to make further assessments (urine sample, EKG, recheck of the plaintiff's blood pressure) in order to determine whether a physician should be contacted.

The plaintiff insisted on leaving the health care unit. He signed the refusal-of-treatment form Redman proffered him only after adding qualifiers to the document.[4]

Several staff members witnessed the affair. Redman documented the incident in the plaintiff's medical file, completed an incident report, and issued the plaintiff a disciplinary report charging him with insolence and threats or intimidation.

### DISCUSSION

No outcome-dispositive facts are in dispute, and the defendant Redman has established that she is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that Redman acted with deliberate indifference to the plaintiff's serious medical needs, or denied him access to a doctor because the plaintiff is black.

It should first be noted that the plaintiff continues to complain that he is unable properly to respond to the motion for summary judgment because he is being denied access to his legal materials. The court will not revisit that issue. By Order of August 26, 1998, the court directed the warden to release the plaintiff's legal materials to him. In a notice of compliance filed on September 4, 1998, defense counsel reported that prison officials were allowing the plaintiff to keep all legal materials relating to "anything that he is currently working on," and that the plaintiff could request access to eight additional boxes of legal materials that were locked in storage as excess property.

---

4. The refusal form is not in the record.

In any event, the court does not understand what documentary evidence might support the plaintiff's claims. If the plaintiff wished to refute Redman's account of the events of October 11, 1993, he needed only to submit a counter-affidavit. The plaintiff was granted almost three months in which to respond to the motion for summary judgment, but has failed to show that a triable issue of material fact exists.

■ In order for a prison inmate to prevail under 42 U.S.C. § 1983 on a claim of medical mistreatment, he must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The indifference to medical needs must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. *Estelle; Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991) (if the claim is merely medical malpractice, it should be brought in state court). Deliberate indifference may be demonstrated by actual intent or by reckless disregard. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). In the case at bar, the record does not support a finding that Redman acted with deliberate indifference to any serious medical need.

■ First, it is questionable whether the plaintiff's condition on the date in question was "serious." Under the Seventh Circuit's recently adopted standard,

A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.... [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997). When the plaintiff reported to the health care unit, he had elevated blood pressure and believed that he was experiencing kidney or other internal problems. But the plaintiff appeared to be in no acute distress; his pulse rate was normal and his breathing was unlabored. Because the plaintiff stormed out of the health care unit without submitting to the tests Redman thought were in order, the nursing staff was unable to determine whether the plaintiff had any "serious" problem that needed a doctor's attention. [Indeed, the plaintiff indicated at his deposition that he developed kidney problems and diabetes only after he went on a "hunger strike" the following month.]

The thrust of the plaintiff's claim is that Redman refused to allow him to see a doctor. But the decision whether to summon a doctor, like the question of whether a certain diagnostic technique or form of treatment should be prescribed, "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The plaintiff had no constitutional right to see a doctor on demand simply because he thought he needed to see one. *See Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992): "Society does not expect that prisoners will have unqualified access to health care." Redman properly attempted to screen the plaintiff in order to determine whether referral to a physician was necessary. The plaintiff cites no medical authority to support his repeated assertion that Redman was unqualified to diagnose his needs.

The plaintiff does not contest Redman's account of what transpired in the health care unit. He appears to dispute only whether he was on the "chronically ill" list, which is a non-issue. Because the plaintiff refused to cooperate with the nursing staff when they attempted to assess his needs, he waived any right to challenge the denial of access to a physician.

The defendant has entirely failed to address the plaintiff's claim of race discrimination, either in her affidavit or in her summary judgment brief. But the record fails to

support an inference that Redman denied the plaintiff medical care because he is black.

The mere fact that the plaintiff happens to be African American while Redman and Douglas are Caucasian does not, without more, create a presumption of race discrimination. A mere conclusory allegation of intentional discrimination is insufficient for the matter to go to trial. *Davis v. Frapolly,* 717 F.Supp. 614, 616 (N.D.Ill.1989). Redman states in her uncontested affidavit that she attempted unsuccessfully to reason with the plaintiff and to explain the need for taking additional tests to determine whether treatment by a physician was warranted. She asserts, without contradiction, that the plaintiff became progressively louder and more combative, and that he eventually left the health care unit of his own accord. Assuming arguendo that Redman called the plaintiff a "nigger," as he alleges in his fourth amended complaint, her remarks were unprofessional and inexcusable. But the court is unpersuaded that events would have transpired any differently had the plaintiff been white.

In sum, no material facts are in dispute, and the defendant has shown that she is entitled to judgment as a matter of law. Although the plaintiff was most unhappy having to go through the nursing staff before being allowed to see a doctor, the record does not reflect the defendant's deliberate indifference to a serious medical need. Nor can the plaintiff's equal protection claim survive the defendant's motion for summary judgment. By his own actions, the plaintiff himself is responsible for leaving the health care unit without seeing a doctor. Based on the record before the court, no reasonable person could find that the defendant violated the plaintiff's constitutional rights.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (docket # 57) is allowed. The Clerk is directed to enter judgment in favor of the defendant Redman and against the plaintiff pursuant to Fed.R.Civ.P. 56. As this order disposes of the plaintiff's claims against the sole remaining defendant, the case is terminated in its entirety. The parties are to bear their own costs.