2013 IL App (3d) 110477

Opinion filed February 22, 2013

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2013

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) ) ) | Appeal from the Circuit Court for the 14th Judicial Circuit, Whiteside County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-11-0477 Circuit No. 10 CM 409 |
| DANIEL SMITH, | ) ) ) | The Honorable Michael R. Albert, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Carter and Holdridge specially concurred, with opinion.

**OPINION**

¶ 1    Defendant, Daniel Smith, appeals his conviction and sentence for obstructing a peace officer. We affirm defendant's conviction, vacate his sentence, and remand to the circuit court for further proceedings.

¶ 2                                FACTS

¶ 3    Defendant was charged with one count of obstructing a peace officer and one count of resisting a peace officer. The conviction on the resisting count has not been challenged on appeal. The pertinent section of the complaint alleged:

"Defendant committed the offense of OBSTRUCTING A PEACE OFFICER, in that said Defendant knowingly obstructed the performance of Jacob Reul of an authorized act within his official capacity, being the arrest of Daniel E. Smith, knowing Jacob Reul to be a peace officer engaged in the execution of his official duties, in that he exited his vehicle during a traffic stop *** and refused to return to the vehicle in violation of Chapter 720, Act 5, Section 31-1, Illinois Compiled Statutes."

¶ 4    The matter proceeded to a jury trial. Jacob Reul, an officer with the Sterling police department, testified that he stopped Smith's vehicle in front of his house for speeding. Reul informed defendant that he would be receiving a ticket for speeding and directed him to stay in his vehicle.

¶ 5    Upon returning to his squad car, Reul took approximately 20 minutes to run defendant's information and prepare a traffic citation. However, before he was able to sign the citation, defendant exited his vehicle carrying a grocery bag. Even though Reul instructed defendant to return three to five separate times, defendant refused to comply. Instead, defendant complained told Reul that Reul was taking too long and that defendant was going into his house to put away his cold groceries and check on his children , who were home alone. Reul grabbed defendant's arm and told him to return to his vehicle or he would be placed under arrest. When defendant again refused to comply, Reul told defendant he was under arrest. At that time, defendant tightened his arm and pulled away. Reul placed defendant into an "arm bar" hold and swept his feet out from under him, taking defendant to the ground. Reul testified that because defendant

2

would not put his hands behind his back, he had no choice but to use pepper spray. Ultimately, a second officer arrived and defendant was placed in handcuffs.

¶ 6 Maggie Ellmaker, an officer with the Sterling police department, testified that when she arrived at the scene of the incident, Reul was "in a fight" with defendant, who was facedown on the ground on his chest. Reul was on defendant's back, and defendant was trying to push off the ground with his legs. Ellmaker grabbed defendant's arm and helped get him handcuffed.

¶ 7 Defendant moved for a directed verdict on the obstructing charge (count I). Defendant argued that there was no showing that he had obstructed Reul because, except for the signature, the citation was complete at the time defendant exited his car. The court denied the motion, noting that defendant had obstructed Reul by not obeying the order to return to his car.

¶ 8 Defendant's daughter testified that she observed the incident from the front window of the family's residence. She saw an officer back defendant up against his vehicle, sit defendant on the ground, place defendant in a choke hold, and spray defendant with pepper spray. Defendant's wife did not witness the incident; however, she testified that defendant is not a violent person.

¶ 9 Defendant testified that he is an assistant manager at a dollar store and he was on his way home from work when he was pulled over in front of his residence by Reul. Defendant admitted he was speeding. Defendant gave Reul the information that was requested and waited in his car. Defendant alleges Reul did not instruct him to stay in his vehicle and the temperature was approximately 100 degrees at the time defendant was pulled over. While he waited in his vehicle, he started getting very hot and feeling sick. He did not have his vehicle's air conditioning on because he did not want to run out of gas.

¶ 10 After about 20 minutes, defendant exited the vehicle in order to check on his children

who were home alone and to place his cold and frozen grocery items in the refrigerator. Reul exited his squad car, grabbed defendant's wrist, and backed defendant up against his vehicle. Defendant told Reul that he would return to his vehicle, but would stand outside of it because it was so hot. Reul tried to sweep defendant's feet out from under him, but ended up just kicking defendant's leg. Reul then forced defendant to the ground and sat on him. Defendant said he was having problems breathing. Defendant also testified that Reul tried to force defendant's arms behind his back, but his arms would not bend at that angle because of a prior shoulder or rotator cuff injury he had suffered. Reul then placed defendant in a choke hold and sprayed him with pepper spray. Defendant admitted trying to push up on his knees, explaining that he was having breathing problems.

¶ 11    Defendant was convicted of both obstructing a peace officer and resisting a peace officer. The circuit court imposed a sentence of 48 consecutive hours in the county jail on each count to be served concurrently. Defendant requested credit for two days of time already served. The court denied defendant's request because "they were not consecutive days." A motion to stay sentence pending appeal was granted.

¶ 12                                    ANALYSIS

¶ 13    Defendant argues that we must vacate his conviction for obstructing a peace officer on the ground that there was a fatal variance between the charge in the complaint and the proof adduced at trial. The complaint charged defendant with obstructing his own arrest by exiting his vehicle and refusing to return to it. In his initial brief, defendant calls our attention to the fact that evidence at trial established that defendant was not under arrest at the time he exited the vehicle. Specifically, it states:

4

"Recognizing that defendant was not under arrest at the time he exited his vehicle and refused the officer's requests to return, the State switched its theory at trial. Specifically, defense counsel made a motion for directed verdict and argued that defendant could not have obstructed his arrest as charged in Count I because he had not been placed under arrest at that time. The State responded that defendant obstructed the officer's preparation of the traffic citation because the officer had not signed his name to the citation yet and therefore had not completed the authorized act of writing the citation. Thus, the State evidence and argument at trial differed from what was charged in the complaint."

¶ 14    A defendant is only entitled to a new trial if he can show (1) that a variance existed between the allegations in a complaint and proof at trial, and (2) that said variance was fatal to his conviction. *People v. Collins*, 214 Ill. 2d 206, 219 (2005). A variance between allegations in a complaint and proof at trial is fatal to a conviction if the variance is material and could mislead the accused in making his defense. *Collins*, 214 Ill. 2d at 219.

¶ 15    The parties initially dispute whether a variance even exists. The State alleges that defendant was under arrest at the time Reul informed him that he would be receiving a citation.[1] Under this interpretation no variance would exist between the complaint and the proof at trial.

[1] While we acknowledge that defendant testified he was never told to stay in the vehicle while the citation was being prepared, we are compelled to accept Reul's contrary testimony in light of our standard of review. See *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

5

Defendant, however, contends that he was merely seized at this point, as defined in *Terry v. Ohio*, 392 U.S. 1 (1968).

¶ 16     There is no bright-line test for distinguishing between a *Terry* stop and a custodial arrest. *People v. Arnold*, 394 Ill. App. 3d 63, 70 (2009). Whether an encounter constitutes an arrest or a *Terry* stop "depends on the degree of the intrusion or coerciveness surrounding the detention." *People v. Carlson*, 307 Ill. App. 3d 77, 80 (1999). For example, the use of handcuffs to restrain the person being detained is an indication that the detention is an arrest rather than a *Terry* stop. *People v. Gabbard*, 78 Ill. 2d 88, 93 (1979). While the determinative test is subjective, the supreme court has held that the essential elements of an arrest are (1) the intent of the police to make the arrest, and (2) the defendant's understanding, based on an objective standard of reasonableness, that he is in fact under arrest. *People v. Johnson*, 159 Ill. 2d 97, 116 (1994).

¶ 17     A review of the parties' cited cases reveals an apparent split of authority on the issue of whether a person stopped for a minor traffic violation is under arrest or merely seized. The defendant cites *People v. Gilbert*, 347 Ill. App. 3d 1034 (2004). The *Gilbert* court held that "a reasonable person, when stopped for a minor traffic violation, would not view himself as being under arrest but merely temporarily stopped." *Gilbert*, 347 Ill. App. 3d at 1040. In response, the State cites *People ex rel Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515 (1999) (defendant considered under arrest when stopped by municipal police officer for a traffic violation), *People v. Stewart*, 242 Ill. App. 3d 599 (1993) (defendant's arrest occurred at the time officer advised defendant that a citation would be issued to him for speeding), and *People v. Kinney*, 189 Ill. App. 3d 952 (1989) (defendant arrested when officer stopped defendant's vehicle intending to issue defendant a traffic citation).

6

¶ 18    While we acknowledge the apparent split of authority, we need not answer the precise question of whether defendant was under arrest or merely seized at the time Reul informed him that he would be receiving a citation.  Even if we were to accept defendant's argument that he was merely seized and thus a variance did exist between the charge in the complaint and the proof adduced at trial, the variance is not fatal to defendant's conviction.  The evidence at trial did establish an act from which the jury could have found the defendant guilty of obstructing a peace officer.

¶ 19    Article 31 of the Criminal Code of 1961 (the Code) addresses various offenses related to interference with public officers.  Section 31-1(a) specifically relates to resisting or obstructing a peace officer and provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity commits a Class A misdemeanor."  720 ILCS 5/31-1(a) (West 2010).

¶ 20    Here, the State did not need to establish that defendant was under arrest to secure a conviction for obstructing a peace officer.  Instead, the State needed to prove only that: (1) defendant knowingly obstructed a peace officer; (2) the officer was performing an authorized act in his official capacity; and (3) defendant knew he was a peace officer.

¶ 21    In the instant case, Reul pulled defendant over with his squad car while on duty.  Reul informed defendant that he was going to issue him a speeding citation.  Clearly, defendant knew Reul was a peace officer and was performing an act within his official capacity – issuing defendant a speeding citation.  With this knowledge defendant got out of his vehicle and refused

7

Reul's commands to get back into the vehicle, thereby disrupting and impeding Reul in the performance of an official duty. The complaint accurately stated the actual obstructing conduct – "he exited his vehicle during a traffic stop *** and refused to return to the vehicle." Even assuming the complaint inaccurately stated the official act Reul was performing at the time defendant engaged in such conduct – arresting defendant vs. issuing the citation – this variance did not mislead the defendant in making his defense in light of the fact that the record establishes that defendant knew he was being issued a citation and also that Reul was still in the process of issuing the citation.

¶ 22    In reaching our decision, we reject defendant's assertion that simply exiting his vehicle and refusing to return does not constitute obstructive behavior. Recently, the supreme court in *People v. Baskerville*, 2012 IL 111056, ¶ 19 explained:

> "The term 'obstruct' is not defined in section 31-1. When a statutory term is not expressly defined, it is appropriate to denote its meaning through its ordinary and popularly understood definition. [Citation.] At the time the statute was adopted, the dictionary defined 'obstruct' to mean '1 : to block up : stop up or close up : place an obstacle in or fill with obstacles or impediments to passing *** 2 : to be or come in the way of : hinder from passing, action, or operation : IMPEDE ***.' [Citation.] In turn, 'hinder' means 'to make slow or difficult the course or progress of' [citation], and 'impede' means "to interfere with or get in the way of the progress of' [citation]. Applying the dictionary definition, it

8

is evident that 'obstruct' encompasses physical conduct that literally creates an obstacle, as well as conduct the effect of which impedes or hinders progress."

¶ 23 Disobeying an officer's command and refusing to further comply can be included in the above definition, as it can undoubtedly interfere with the completion of an officer's duty. The fact that the actual citation was complete, absent Reul's signature, is of no consequence as Reul was clearly still in the process of *issuing* the citation. The evidence, when taken in the light most favorable to the State, establishes that the defendant possessed the requisite mental state while committing an act sufficient to support his conviction for obstructing a peace officer.

¶ 24 Finally, defendant maintains that he is entitled to two days' credit against his sentence for time he spent in custody prior to sentencing.[2] The trial court denied defendant's credit request because the days he spent in custody prior to sentencing were "not consecutive days." Upon review, we find section 5-4.5-100(b) of the Unified Code of Corrections requires defendant be awarded two days' credit.

¶ 25 Section 5-4.5-100(b) of the Unified Code of Corrections,[3] entitled "Calculation of Term of Imprisonment," provides:

"(b) CREDIT; TIME IN CUSTODY; SAME CHARGE.

---

[2] Whether defendant should receive presentence custody credit against his sentence is a question of law subject to *de novo* review. *People v. Johnson*, 401 Ill. App. 3d 678, 680 (2010).

[3] Section 5-4.5-100 was enacted in 2009 as part of several amendments to the Unified Code of Corrections. Prior to the amendment, the same provisions were found in section 5-8-7, now repealed.

***[T]he offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). Except when prohibited by subsection (d), the trial court may give credit to the defendant for time spent in home detention, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." 730 ILCS 5/5-4.5-100(b) (West 2010).

¶ 26    Section 531-1(a-5) of the Criminal Code of 1961, provides:

"(a-5) In addition to any other sentence that may be imposed, a court *shall order* any person convicted of resisting or obstructing a peace officer *** to be sentenced to a minimum of 48 consecutive hours of imprisonment or ordered to perform community service for not less than 100 hours as may be determined by the court. The person shall not be eligible for probation in order to reduce the sentence of imprisonment or community service." (Emphasis added.) 720 ILCS 5/31-1(a-5) (West 2010).

¶ 27    The court *ordered* defendant to serve 48 consecutive hours of imprisonment. Thus, it complied with the mandate prescribed in section 531-1(a-5). However, the court failed to

comply with section 5-4.5-100(b)'s mandate that defendant be given credit for presentence custody. Subsections (d) and (e) of section 5-4.5-100 expressly provide for exclusion of credit in certain circumstances, neither of which is applicable in the instant case.[4] Thus, defendant was entitled to two days' credit under section 5-4.5-100(b). *People v. Smith*, 258 Ill. App. 3d 261, 267 (1994) ("A defendant held in custody for any part of the day should be given credit against his sentence for that day.") The fact that defendant did not serve these two days consecutively is irrelevant. Section 531-1(a-5) merely requires that defendant be *ordered* to serve 48 consecutive hours.

_____

[4] "(d) NO CREDIT; SOME HOME DETENTION. An offender sentenced to a term of imprisonment for an offense listed in paragraph (2) of subsection (c) of Section 5-5-3 (730 ILCS 5/5-5-3) or in paragraph (3) of subsection (c-1) of Section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501) shall not receive credit for time spent in home detention prior to judgment.

(e) NO CREDIT; REVOCATION OF PAROLE, MANDATORY SUPERVISED RELEASE, OR PROBATION. An offender charged with the commission of an offense committed while on parole, mandatory supervised release, or probation shall not be given credit for time spent in custody under subsection (b) for that offense for any time spent in custody as a result of a revocation of parole, mandatory supervised release, or probation where such revocation is based on a sentence imposed for a previous conviction, regardless of the facts upon which the revocation of parole, mandatory supervised release, or probation is based, unless both the State and the defendant agree that the time served for a violation of mandatory supervised release, parole, or probation shall be credited towards the sentence for the current offense." 730 ILCS 5/5-4.5-100(d), (e) (West 2010).

11

¶ 28   Justice Carter agrees with the above holding regarding defendant's sentence; however, he believes that this issue "must be resolved in light of the County Jail Good Behavior Allowance Act" (Behavior Allowance Act) (730 ILCS 130/3 (West 2010)). *Infra*, ¶33. Initially, we note that neither party raised any issue in the trial court or here on appeal with regard to the Behavior Allowance Act. Thus, we find any analysis under the Behavior Allowance Act inappropriate. Substantively, however, we hold the Behavior Allowance Act has no bearing on the present appeal as it only applies to situations where there is a "mandatory minimum" sentence.

¶ 29   The Behavior Allowance Act provides that persons jailed for offenses "for which the law provides a mandatory minimum sentence" cannot be given any good-behavior allowance which "would reduce the sentence below the mandatory minimum." 730 ILCS 130/3 (West 2010). The instant case does not present us with such a situation in light of the fact that relevant sentencing statute grants the trial court discretion to impose community service as opposed to imprisonment alone. See 720 ILCS 5/31-1(a-5) (West 2010). Hence, there is no "mandatory minimum" and the Behavior Allowance Act is inapplicable.

¶ 30   For the foregoing reasons, we affirm defendant's conviction for obstructing a peace officer, vacate his sentence for that offense, and remand to the circuit court for further proceedings.

¶ 31   Affirmed in part and vacated in part; cause remanded.

¶ 32   JUSTICE CARTER, specially concurring.

¶ 33   I agree with the majority's conclusion on the first issue that there was no fatal variance in the present case. I also agree with the majority's conclusion on the second issue that defendant is entitled to credit for two days actually served. However, contrary to the arguments of the parties

12

and the majority's analysis, I believe that this issue must be resolved in light of the County Jail Good-Behavior Allowance Act (Act) (730 ILCS 130/3 (West 2010)), which applies anytime a defendant is sentenced to serve time in a county jail. The Act prohibits an award of a good behavior allowance that would reduce a sentence below the mandatory minimum. 730 ILCS 130/3 (West 2010); *People ex rel. Birkett v. Jorgensen (Birkett)*, 216 Ill. 2d 358, 360-61 (2005). Although the Act and the *Birkett* case would seem to require that the instant defendant be denied good-time credit (see 730 ILCS 130/3 (West 2010); *Birkett*, 216 Ill. 2d at 363-65), I believe that the intent of the Act has been satisfied here since the record shows that the instant defendant served two actual days in custody. See *In re S.B.*, 2012 IL 112204, ¶ 28 (the court had the authority to read into a statute language omitted by oversight, which was plainly implied by the general context of the act and which was necessary to prevent the legislative purpose from failing in one of its material aspects).

¶ 34    For the reasons stated, I specially concur with the majority's opinion.

¶ 35    JUSTICE HOLDRIDGE, specially concurring.

¶ 36    I agree that the defendant's conviction for obstructing a peace officer should be affirmed. However, I would uphold the conviction on different grounds than those relied upon by the majority. In my view, there was no variance of any kind between the charge and the proof presented at trial. Count I of the criminal complaint charged that the defendant knowingly obstructed his "arrest" by exiting his vehicle during a traffic stop and refusing to return to the vehicle. An "arrest" occurs when a person's freedom of movement has been restrained by means of physical force or show of authority. *People ex rel. Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515, 531 (1999). In determining whether a person has been arrested, the relevant inquiry is "whether a reasonable, innocent person

in his situation would conclude that he was not free to leave." (Internal quotation marks omitted.) *Id.* If a reasonable person would not feel free to leave due to a show of authority by a police officer, then the person has been "arrested," even if he has not been taken into custody. *Id.* Applying these standards, our appellate court has held that a motorist is "under arrest" during a traffic stop when a police officer advises the defendant that the officer will be issuing him a traffic citation for a violation of the Illinois Vehicle Code, such as speeding.[5] *Id.*; *People v. Stewart*, 242 Ill. App. 3d 599, 604 (1993); *People v. Kinney*, 189 Ill. App. 3d 952, 955 (1989). This rule is logical because, when a police officer advises a motorist that he will be receiving a ticket, a reasonable person "does not feel that he can leave until issuance of the ticket and permission to leave is given." *Village of Hanover Park*, 311 Ill. App. 3d at 531.

¶ 37    Thus, in this case, the defendant was under arrest at the time Officer Reul informed him that he would be receiving a ticket for speeding and directed him to remain in his vehicle. By exiting his vehicle before Officer Reul issued the ticket, the defendant obstructed his "arrest," just as the criminal complaint alleged. There was, therefore, no variance between the charge and the evidence adduced at trial.

¶ 38    Justice McDade states that there is an "apparent split of authority on the issue of whether a person stopped for a minor traffic violation is under arrest or merely seized." *Supra* ¶ 17; see also *supra* ¶ 18. Specifically, the majority maintains that *Village of Hanover Park*, *Stewart*, and *Kinney* conflict with *People v. Gilbert*, 347 Ill. App. 3d 1034, 1040 (2004), which states that "a reasonable person, when stopped for a minor traffic violation, would not view himself as being under arrest but

---

[5] Until that moment, an ordinary traffic stop is more analogous to a *Terry* investigative stop than to a formal arrest. *People v. Gonzalez*, 204 Ill. 2d 220, 226 (2003).

merely temporarily stopped." See *supra* ¶ 17. In my view, that is a red herring. In this case, the relevant question is not whether a motorist is arrested when he is *stopped* for a minor traffic violation. Rather, the question is whether a motorist is arrested when a police officer advises the motorist that he will be receiving a ticket and tells him to remain in his car. Each of the cases that have addressed the latter question has answered it in the affirmative. *Stewart*, 242 Ill. App. 3d at 604; *Kinney*, 189 Ill. App. 3d at 955; *Village of Hanover Park*, 311 Ill. App. 3d at 531. *Gilbert* involved materially different circumstances. In *Gilbert*, the police officer issued a *warning* ticket, not a traffic citation. *Gilbert*, 347 Ill. App. 3d at 1040. In so doing, the officer in *Gilbert* "elect[ed] not to enforce the traffic law" and "display[ed] his intent not to make a formal arrest for the traffic violation." *Id.* Thus, the very thing that was held to trigger an "arrest" in *Village of Hanover Park*, *Stewart*, and *Kinney*—i.e., the police officer's communication of an intent to issue a traffic citation—was absent in *Gilbert*. *Gilbert* is therefore distinguishable from the instant case and from *Village of Hanover Park*, *Stewart*, and *Kinney*. In my view, there is no split of authority on the central question presented in this appeal. Each of the relevant cases supports the conclusion that the defendant was arrested.

¶ 39    To be clear, in my view, the relevant question is not whether a *custodial* arrest occurred in this case. It clearly did not. The question is whether a reasonable, innocent person in the defendant's position would have felt free to leave. As noted, Officer Reul told the defendant that he would be receiving a ticket and ordered him to remain in his car. At that point, no reasonable person in the defendant's position would have felt free to leave. Accordingly, the defendant was arrested at that time even though he had not yet been taken into custody.[6]

---

[6] This does not mean, however, that every motorist who is issued a traffic citation is

15

¶ 40    In my view, the evidence in this case demonstrates that the defendant was arrested and that he knowingly obstructed his arrest, as charged in the criminal complaint. I would hold that there was no variance between the charge and the proof, and I would affirm the defendant's conviction on that basis.

¶ 41    As to the second issue raised in this appeal, I agree that the defendant's sentence should be vacated for the reasons set forth by Justice McDade, and I concur fully with her analysis of that issue.

---

automatically subject to a search incident to arrest. The United States Supreme Court has held that the issuance of a traffic citation, without more, does not justify a search incident to arrest because the rationales supporting such a search (officer safety and the need to preserve evidence) are not implicated when an officer issues a citation for a routine, already completed traffic offense such as speeding. *Knowles v. Iowa*, 525 U.S. 113, 116-18 (1998); see generally *People v. Jones*, 215 Ill. 2d 261, 271 (2005).