In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1791

KENYATTA BRIDGES,

*Plaintiff-Appellant,*

*v.*

THOMAS J. DART, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-04635 — **Manish S. Shah**, *Judge.*

ARGUED JANUARY 23, 2020 — DECIDED FEBRUARY 19, 2020

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Kenyatta Bridges was a pretrial detainee at the Cook County Department of Corrections ("Department") when he fell out of the upper bunk to which he had been assigned and injured himself. He sued Thomas J. Dart, the Sheriff of Cook County, Illinois ("Sheriff") in his

official capacity,[1] and Cook County, Illinois ("County"), asserting that the injuries he sustained were caused by the defendants' practice of ignoring medically necessary lower bunk prescriptions. The district court granted summary judgment in favor of the defendants and we affirm.

We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to the plaintiff and construing all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Lapre v. City of Chicago*, 911 F.3d 424, 430 (7th Cir. 2018). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 247–48; *Lapre*, 911 F.3d at 430.

Bridges entered the Department as a pretrial detainee in February 2014. Cook County Hospital medical records from March 26, 2014 indicated that Bridges had suffered blunt head trauma. The "Patient Care" portion of the record indicated a prescription for a lower bunk: "Alert CCDOC (Order): 3/26/2014 09:36, Lower Bunk, Routine, 26, WEEK, 9/24/2014 09:35." September 24, 2014 was precisely twenty-six weeks after March 26, 2014, and so we may infer that the order for a lower bunk covered the period between March 26 and September 24 of that year. The Sheriff's records showed a correspond-

---

[1] "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In this instance, the suit against the Sheriff in his official capacity is treated as a suit against the County.

ing alert on that same day, noting that Bridges was to be assigned to a lower bunk with an "Alert Start Date" of March 26, 2014 and an "Alert End Date" of September 24, 2014. Despite that alert, Bridges was assigned to a top bunk and on April 24, he fell out of the top bunk and injured himself.

Bridges sued the Sheriff and the County under 42 U.S.C. § 1983, asserting a claim for deliberate indifference to his medical needs.[2] According to Bridges, the defendants had a policy, practice or procedure to ignore medically necessary prescriptions for lower bunk placements. In support of this claim, Bridges cited in his complaint five lawsuits filed by Department detainees who alleged that, between 2005 and 2012, they were injured when using upper bunks after their lower bunk prescriptions were ignored.

In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity (here, a county) itself caused the constitutional violation at issue. *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694–95 (1978)).

---

[2] For pretrial detainees asserting due process claims for inadequate medical care, the standard of objective reasonableness, and not deliberate indifference, governs. *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). *See also Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (pretrial detainees bringing due process medical claims must demonstrate that the defendant acted purposefully, knowingly, or recklessly, and then must show that the defendant's conduct was objectively unreasonable). The district court correctly recognized both that objective reasonableness was the applicable standard, and that Bridges' claim would fail under either the objectively reasonable standard or the deliberate indifference standard.

> [A] local government may not be sued under § 1983
> for an injury inflicted solely by its employees or
> agents. Instead, it is when execution of a govern-
> ment's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy, inflicts the
> injury that the government as an entity is responsi-
> ble under § 1983.

*Monell*, 436 U.S. at 694. A policy or custom need not have
received formal approval through official decisionmaking
channels. *Monell*, 436 U.S. at 690–91; *Thomas v. Cook County
Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). A practice that
is widespread and well settled may also result in liability.[3]
*Thomas*, 604 F.3d at 303. *See also Connick v. Thompson*, 563 U.S.
51, 61 (2011) ("Official municipal policy includes the decisions
of a government's lawmakers, the acts of its policymaking
officials, and practices so persistent and widespread as to
practically have the force of law."). We have not adopted
bright-line rules defining "widespread custom or practice," but
there must be some evidence demonstrating that there is a
policy at issue rather than a random event or even a short
series of random events. *Thomas*, 604 F.3d at 303. As we noted

---

[3] There are several ways in which a plaintiff may prove the "policy or
custom" element. As we recently summarized, "[e]ither the content of an
official policy, a decision by a final decisionmaker, or evidence of custom
will suffice." *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir.
2017). In this case, the plaintiff does not contend that the defendants acted
under an official policy or according to a decision by a final decisionmaker.
Bridges argues instead that there was a widespread, unofficial custom at
play.

in *Thomas*, we have rejected claims of widespread custom or practice in cases involving a single incident, or three incidents. 604 F.3d at 303–04. "It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

In the district court, Bridges relied on five inmate complaints over a seven-year period to demonstrate that the defendants had a widespread practice of refusing to honor lower bunk prescriptions. On appeal, Bridges relies on only three of those cases. Two of them settled without any admission of liability and the third was dismissed. Bridges nevertheless asserts that these lawsuits put the defendants on notice that lower bunk prescriptions were being ignored with enough frequency to constitute a widespread practice.

The district court assumed for the purposes of deciding the motion that the complaints initiating these lawsuits constituted admissible evidence.[4] But the court concluded that this

---

[4] Unverified complaints in other cases are simply out-of-court statements that are admissible only to the extent of any other out-of-court statements. *Cf. Beal v. Beller*, 847 F.3d 897, 901-02 (7th Cir. 2017) (a verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment because it contains factual allegations that if included

(continued...)

evidence was inadequate to demonstrate that lower bunk prescriptions were being ignored so frequently that the defendants essentially acquiesced in the practice. The court also noted that Bridges had presented no evidence that would allow an inference that these incidents were anything other than isolated instances of possible misconduct or negligence on the part of individual employees. Nothing connected the incidents and they were not so common as to place the defendants on notice of a widespread practice. That was a sound analysis and the court correctly granted summary judgment in favor of the defendants. These incidents were so few and far between that they could not plausibly be described as "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. *See also Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (four incidents fail to meet the test of widespread unconstitutional practice that is so well settled that it constitutes a custom or usage with the force of law); *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (three incidents do not amount to a widespread practice); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (three

---

[4] (...continued)

in an affidavit or deposition would be considered evidence); *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996) (same). Bridges argues that he is not citing the complaints for the truth of the allegations contained therein but rather to demonstrate that the defendants were on notice that jail personnel were ignoring valid prescriptions for lower bunks. At most, however, the complaints demonstrate that the defendants were aware that detainees had accused Department staff of ignoring lower bunk prescriptions. Without any evidence regarding the defendants' knowledge of the legitimacy of those complaints, the complaints do little to advance Bridges' argument.

incidents in a four-year period are too few to indicate that a city had a widespread custom of which city policymakers had reason to be aware).[5]

We suppose that if the Cook County Department of Corrections housed as few inmates as Sheriff Andy Taylor's two-cell lockup in small town Mayberry, three or five incidents in a short period of time might create a question for a jury regarding whether a practice is widespread. But more than five million people reside in Cook County, and the Department houses thousands of detainees, with hundreds entering and leaving on a daily basis. In this context, three or five incidents over a seven-year period is inadequate as a matter of law to demonstrate a widespread custom or practice.

AFFIRMED.

---

[5] We have also considered Bridges' argument regarding the answers to the complaints in his cited cases, where the defendants claimed insufficient knowledge or information to form a belief as to the truth of certain allegations regarding prescriptions for lower bunks. Finding no merit in that argument, we decline to address it further.