NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 30, 2020[*]
Decided May 1, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-3009

| | |
|---|---|
| WALTER THOMPSON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 16-2390-CSB |
| TIMOTHY BUKOWSKI, *et al.,* *Defendants-Appellees.* | Colin S. Bruce, *Judge.* |

**O R D E R**

Detainee Walter Thompson sued three jail administrators for violating his right to practice his religion freely. His complaint included claims against other defendants, which the district court dismissed at screening for being "wholly unrelated" to the religious-freedom claims. *See* FED. R. CIV. P. 20(a)(2). The court entered summary judgment for the defendants, concluding that Thompson lacked evidence that his religious freedom was substantially burdened. Because Thompson's transfer to a new facility mooted his statutory claim for injunctive relief, we vacate the judgment as to

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that claim and remand with instructions to dismiss it as moot. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). We affirm in all other respects.

At this stage, we construe all facts, and draw all reasonable inferences from them, in Thompson's favor. *Bridges v. Dart*, 950 F.3d 476, 478 (7th Cir. 2020). Thompson, a practicing Muslim who has been incarcerated since 2012, was housed at the Jerome Combs Detention Center in Kankakee County, Illinois, on and off between 2012 and 2017. A jury found Thompson guilty on state charges in 2012, and a federal case against him began in 2013. The events that give rise to this case stem from time Thompson spent at the jail as a federal pretrial detainee from March 2014 to May 2015.

First, Thompson submitted a request for Muslim group worship at the jail, including Ju'mah, a congregate prayer service observed by Muslims every Friday. Jail officials advised Thompson that they were looking for an imam to lead services. Although they made contact with an imam and Muslim community groups, no one came to lead services. In fact, no Muslim volunteer ever visited the jail while Thompson was housed there, even though Christian volunteers often distributed free Bibles and other religious literature. Muslim inmates were, however, allowed an extra towel to use as a prayer rug and could request a free Quran. Without the option of group worship, Thompson prayed in his cell, used a towel as a prayer rug, and read from his own Quran (he did not require a copy from the jail).

In addition, for a two-month period in 2015, Thompson's girlfriend attempted to send him several issues of *The Final Call* (a newspaper affiliated with the Nation of Islam), but he never received them. And, after a cell shakedown, Thompson noticed a copy of *The Final Call* was missing from his cell and complained; despite the defendants' promises that they would try to get it back to him, it was never returned.

Finally, Thompson asked to be placed on the jail's list of inmates observing the Muslim holy month of Ramadan, which requires fasting between sunrise and sunset for 30 days. The jail has a policy whereby inmates observing Ramadan receive breakfast before sunrise, are not served lunch, and then receive a double portion of dinner after sunset. But, five days into the fast, Thompson submitted a request stating: "This facility isn't equip[ped] for Muslims and/or Islamic services. May I please be removed from the Ramadan list. I can save my food for fast." During the litigation he explained that he asked to be taken off the list because he was not served a tray one evening and was not served double portions; he did not make this known at the jail, however.

Thompson sued under 42 U.S.C. § 1983, alleging that the defendants violated his right to practice his religion freely as protected by the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc. His complaint also described numerous other grievances about the jail, including faulty mail procedures, inhumane van rides, violations of his medical privacy rights, cruel cell conditions, an unfair disciplinary system, improper handling of hunger strikes, and flawed grievance procedures.

At screening, a district judge (Harold A. Baker) found that Thompson stated only a religious-freedom claim and a due-process claim[1] (based on the allegedly unsafe van rides). Thompson then filed a motion to reconsider the dismissal of his challenges to the mail and grievance procedures and the medical-privacy claim. The presiding judge (Colin S. Bruce) ruled on the motion and determined that only the religious-freedom claim against three of the defendants (the county sheriff and the chief and assistant chief of corrections) could proceed in a single case. He dismissed the remaining claims without prejudice, advising Thompson that they were "wholly unrelated" and that he could assert them in separate suits. (Thompson filed a separate lawsuit about the van rides.) Later, on the defendants' motion, the district court entered summary judgment, concluding that the defendants made reasonable efforts to provide opportunities for Thompson's religious practice and that their failures to provide an imam and a few copies of *The Final Call* did not substantially burden his ability to practice his religion. So his claim under the Act, and, necessarily, under the more stringent First Amendment standard, failed.

On appeal, Thompson first contends that the district court improperly dismissed his claims regarding the insufficient mail procedures, privacy violations, and flawed grievance procedure at the screening stage. A prisoner may join defendants in the same action only if the claims against each "aris[e] out of the same transaction, occurrence or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A); *see Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (cautioning district courts to be wary of attempts by inmates "to flout the rules for joining claims and defendants"). Thompson argues

---

[1] Although Thompson was serving a state sentence at the time, he was held at the Kankakee jail as a federal pretrial detainee, so his claim alleging an unreasonable risk to his safety arises under the Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 978–79 (7th Cir. 2013).

generally that, in addition to other jail personnel, the three defendants in this suit were all involved in, or made aware of, the conduct underlying his other claims. But mere overlap between defendants is not enough; "question[s] of law or fact common to all defendants" must exist. FED. R. CIV. P. 20(a)(2)(B). Thompson makes no specific argument that this condition is satisfied. Thus we agree with the district court's approach of preventing Thompson from bringing his far-ranging claims in the same suit just because everything happened at the same jail.

Thompson next argues that the district court erred by entering summary judgment for the defendants on his free-exercise claims, but our de novo review reveals no error here either. *See Bridges*, 950 F.3d at 478. First, Thompson's claim under the Act is now moot because the Act provides for only injunctive relief. 42 U.S.C. § 2000cc–2(f); *see Sossamon v. Texas*, 563 U.S. 277, 287–88 (2011). As of March 2017, he is no longer housed at the jail, and he has not argued that, now that he is in the custody of the Illinois Department of Corrections, he is likely to be held there again. *See Maddox v. Love*, 655 F.3d 709, 716–17 (7th Cir. 2011). The district court bypassed the mootness question because it determined that the statutory claim failed on the merits, but mootness is a jurisdictional issue that cannot be passed over. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("[C]ourts have 'no business' deciding legal disputes or expounding on law in the absence of … a case or controversy.") We therefore address only Thompson's claim under the Free Exercise Clause.

To avoid summary judgment on his First Amendment claim, Thompson needed evidence from which a reasonable jury could find that defendants placed a "substantial burden" on his ability to practice his religion. *See Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). But Thompson did not provide evidence of any impediment that rises to the level of a constitutional violation.

Thompson faults the defendants for not allowing group worship—particularly the weekly Ju'mah—for Muslim inmates. As the district court explained, prisons are not required to arrange for religious leaders to perform communal religious services, so it properly concluded that the absence of an imam at the jail, despite the efforts to recruit one, does not violate the Free Exercise Clause. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). But, Thompson clarifies, his grievance is broader: He believes that he or another inmate would have been qualified to lead the group worship. And Thompson's submissions in the district court do assert that the prison "never" permitted Muslim

inmates to congregate for Ju'mah or for the five-times-daily Salaat (and, further, that informal gatherings to pray in the dayroom were punished).

Despite Thompson's clarification, he still has not raised a material issue of fact to withstand summary judgment on the group-worship issue. If the defendants had forbidden Muslim inmates from group worship, Thompson's claim would have heft; the jail would have to justify such a measure. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52 (1987). But the evidence shows that the defendants were willing to allow Muslim services and took steps in response to Thompson's complaint. They thought, however, that they needed to bring in an imam to lead services, and they made attempts to find one—though they were unsuccessful. Thompson has no evidence that he asked for permission to lead Ju'mah himself, or that he ever clarified that he wanted to hold worship services even without an imam. There is therefore no evidence that the jail forbade Muslim group worship or that these defendants prevented it.

Thompson next contends that the jail inhibited his practice of Islam because no volunteers distributed literature for Muslims, though the jail let volunteers regularly visit to hand out free Christian bibles and religious materials. But although "[p]risons cannot discriminate against a particular religion," *Maddox*, 655 F.3d at 719, there is no evidence that the facility turned away anyone who wished to bring materials to Muslim inmates. Moreover, Thompson had the religious materials he needed to practice his faith during his time at the jail—he had his own Quran and used a towel as a prayer rug. So Thompson's complaints about the prison charging some inmates for the Quran or confiscating extra towels do not apply to him.

Third, Thompson argues that his right to free exercise was violated because he did not receive some issues of *The Final Call* newspaper and had one confiscated from his cell. But Thompson offers no evidence that reading *The Final Call* newspaper is necessary to his observation of Islam, let alone that the missing issues imposed a "substantial burden." If a practice is peripheral to a plaintiff's religion, a burden to it can be characterized as constitutionally de minimis. *See Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003). In light of the record, we agree with the district court that depriving Thompson of a few issues of *The Final Call* is, at most, a de minimis burden to his free-exercise rights. *See, e.g., Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999).

Finally, Thompson argues that the prison failed to accommodate his dietary needs during Ramadan.[2] We have observed that "forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). But in this case, Thompson did not support his claim that the jail forced such a choice. The jail undisputedly had a system in place for accommodating the dietary needs of inmates observing Ramadan. Thompson attested that he did not receive one food tray, and he was not served the promised double portions of food after sunset. Despite these apparent shortcomings in the administration of the Ramadan diet program, however, a reasonable juror could not conclude that Thompson was forced to choose between necessary nutrition and his ability to observe Ramadan. Thompson's request to be removed from the Ramadan list simply stated: "This facility isn't equip[ped] for Muslims and/or Islamic services. … I can save my food for fast." It did not mention the mishaps—he never gave the jail the chance to address them—and, further, it suggests that he was still able to observe the fast.

We have considered Thompson's remaining arguments, and none has merit.

We VACATE the judgment as to Thompson's claim under the Act and REMAND with instructions to dismiss it as moot. In all other respects, we AFFIRM the judgment.

---

[2] This claim was not addressed by the defendants or the district court, but Thompson pressed it in his complaint and at the summary-judgment stage.