**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-7315**

DAVID GRAHAM GOODMAN,

Plaintiff - Appellant,

v.

Z. DIGGS, Sherriffs Deputy; T. MOISETT, Sergeant/Sheriffs Deputy; C. HAYES, Deputy Sheriff; C. RESPASS, Sheriffs Deputy,

Defendants - Appellees,

and

KENNETH W. STOLLE, Sheriff/High Constable,

Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, District Judge. (1:13−cv−00540−AJT−IDD)

Argued: December 10, 2020                    Decided: January 28, 2021

Before KING, WYNN, and RICHARDSON, Circuit Judges.

Vacated and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge King and Judge Richardson joined.

**ARGUED:** Priya Datta, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Jeff W. Rosen, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Erica Hashimoto, Director, Maximilian Crema, Student Counsel, Janae Staicer, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Lisa Ehrich, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees.

———————

WYNN, Circuit Judge:

For years, plaintiff David Graham Goodman has pursued an Eighth Amendment excessive force claim against correctional officers who he claims left him lying bleeding and unconscious in a cell in 2012. We previously concluded that the district court erred in dismissing Goodman's complaint for failure to comply with a court order. *Goodman v. Stolle*, 549 F. App'x 231, 232 (4th Cir. 2014) (per curiam) (citing Fed. R. Civ. P. 41(b)).[1] After significant additional proceedings, during which time the case was reassigned to a new judge, the district court granted summary judgment to the correctional officers.

The issue we confront in this appeal is whether the district court erred by granting summary judgment to the officers without considering the evidentiary value of Goodman's verified original and first amended complaints after Goodman filed an unverified second amended complaint. While this is an issue of first impression for this Court, we are persuaded by guidance from other circuits to conclude that the district court erred and therefore to vacate the district court's order granting summary judgment. Further, on remand, the district court should resolve Goodman's discovery requests before taking a fresh look at the officers' summary judgment motion.

---

[1] We also dismissed a second appeal for lack of appellate jurisdiction. *Goodman v. Stolle*, 571 F. App'x 257 (4th Cir. 2014) (per curiam).

I.

A.

Throughout the proceedings before the district court, Goodman represented himself. He filed three complaints. The original and first amended complaints, filed in 2013, were each verified and notarized.[2] But the second amended complaint, filed in August 2014, was notarized but *not* verified. It differed from the first amended complaint only slightly, naming previously unidentified officers and tweaking the relief sought. Goodman's factual allegations have otherwise been consistent throughout his three complaints.

The two verified complaints averred that Goodman is a mobility-impaired individual who requires the assistance of a wheelchair or cane to ambulate. On November 7, 2012, prison officials transferred him from Chesapeake Correctional Center to Virginia Beach Correctional Center in advance of a probation violation hearing. After the hearing,

---

[2] A complaint is "verified" if it is "signed, sworn, and submitted under penalty of perjury." *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020); *see also, e.g.*, *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (explaining that a complaint is verified if it states "under penalty of perjury that [its] contents [are] true and correct").

While Goodman's first amended complaint lacks the original's explicit statement that "I declare under penalty of perjury that all [the] foregoing is true and correct," the notary who notarized the first amended complaint indicated that the complaint was "[s]worn." *Compare* J.A. 19, *with* J.A. 48. Because it appears that a notarized document is "sworn" in Virginia only if it is made under penalty of perjury, we conclude that Goodman's first amended complaint was also verified. *See* Off. of the Sec'y of the Commonwealth, *A Handbook for Virginia Notaries Public* 13, 18 (Dec. 15, 2017) https://www.commonwealth.virginia.gov/media/governorvirginiagov/secretary-of-the-commonwealth/pdf/2017-December-15-revised-Handbook-.pdf (explaining that a "sworn" notarial act requires the oath taker to swear or affirm that the sworn statement is true and that an affirmation requires "a vow of truthfulness or fidelity on penalty of perjury"). The officers do not contest that Goodman's original and first amended complaints are verified.

4

Goodman was returned to Virginia Beach Correctional Center, placed on a bench in a holding area, and informed that he would be transported back to Chesapeake Correctional Center the following morning.

The verified complaints further averred that Defendant Deputy C. Hayes instructed Goodman to get into his wheelchair to be transported to Virginia Beach Correctional Center's medical area to spend the night. Goodman asked if he would be placed in a lower bunk of the medical area and Hayes replied that Goodman would, in fact, be put on the floor. When Goodman objected that he could not be housed on the floor due to his spinal cord damage, Hayes "became angry," "grabbed [him] by the neck of [his] jumpsuit," and dragged him about fifty feet across a concrete floor to a holding cell. J.A. 40.[3] As Goodman didn't have his cane with him, he lay on the floor, unable to get up.

The verified complaints further averred that some time later, another officer not party to this dispute helped Goodman back into a wheelchair for transportation to the medical unit. Three officers—Defendants Corporal T. Moissett, Deputy Z. Diggs, and Deputy C. Repass—began to transport him.[4] While in transit, Goodman was somehow dislodged from his wheelchair. Cursing, Moissett grabbed Goodman from the floor, "slammed" him back down again, handcuffed him, and, with the help of Diggs, dragged him another hundred yards to a new cell. J.A. 20.

---

[3] Citations to "J.A.__" refer to the Joint Appendix filed by the parties in this appeal.
[4] The spellings of two of Defendants' names (Moissett and Repass) are inconsistent in the record, briefs, and case caption. We employ the spellings used most frequently in the Defendants' Response Brief.

Finally, the verified complaints averred that once in the new cell, Moissett and Diggs slammed Goodman into the floor, splitting his head open over his left eye. One of the officers then removed Goodman's handcuffs while Diggs stepped on his back and Repass stood on his neck. As Goodman informed the officers of his disabilities, Repass kneeled on his neck, ground his bleeding face into the floor, and pushed her thumb into a pressure point behind his right ear. Goodman eventually lost consciousness. He lay in the cell for approximately thirty minutes until a different officer found him and sent him to the nurse. He was transferred back to Chesapeake Correctional Center before dawn the following morning.

The officers' account of the incident is quite different. They do not dispute that Goodman was injured; the nurse's notes reveal that he "was found laying on [his] left side leaning against the wall with [his] head toward the back of the cell . . . with dark red blood pooled on [the] floor around [his] face and crusted to [his] left brow bone/forehead." J.A. 156. Rather, Defendants contend that Goodman was wholly uncooperative and that his injuries were self-inflicted, including that he "purposefully threw his body out of [his] wheelchair" and "sustained a small laceration to his left brow bone" by "purposefully bang[ing] his head against [a] wall." J.A. 250.

The nurse who treated Goodman recorded that he "expressed [an] interest in viewing the videos [of the incident] for a lawsuit against those involved in the incident." J.A. 156. However, although the incident was captured by surveillance cameras, the video footage was not preserved.

6

B.

Goodman repeatedly filed discovery requests to uncover information that he alleged would corroborate his account. These efforts have largely been fruitless.[5] For example, the district court ordered Defendants to produce the video footage documenting the incident. Instead, the officers submitted an affidavit claiming that their supervisors had reviewed the footage, concluded that it did not evidence any use of excessive force, and permitted it to be automatically overwritten.[6] In the years that followed, Goodman repeatedly requested additional discovery, seeking access to digital photographs of his injuries, his medical records, and other documents. It does not appear that most of these requests were ever considered.

The officers filed a motion for summary judgment in 2018, attaching in support several records from Virginia Beach Correctional Center and affidavits from the officers involved in the incident. Goodman opposed summary judgment, arguing that he still needed discovery to prove his claim. He also explicitly referred to the allegations in his complaints. He did not, however, submit any new materials to oppose summary judgment.

---

[5] Goodman's sole success came in June 2014, when the district court permitted him to propound interrogatories to identify the officers involved in the incident.

[6] We share the district court's concern that supervisors at Virginia Beach Correctional Center, after being made aware of the incident, would review the video and then fail to preserve it. That action may warrant an adverse inference against the officers. We are also disappointed with the officers' invocation of the video in an attempt to bolster their case for summary judgment. *See, e.g.*, J.A. 249 ("Dep. Hayes notified one of the Sergeants of the incident, and security camera footage was reviewed and confirmed Dep. Hayes' report of the incident."). We do not view favorably this heads-I-win-tails-you-lose attempt to wield the video to exculpate the officers without making it available to Goodman.

Ignoring Goodman's verified complaints, the district court viewed the officers' materials as "uncontradicted" evidence that their conduct complied with the Eight Amendment and that they "used the minimum force necessary to maintain order and to secure Goodman's compliance with their instructions." J.A. 302. "Under th[ose] circumstances," the district court found "no suggestion . . . that the defendants applied force to Goodman maliciously or sadistically." J.A. 303. It therefore concluded that Goodman's Eighth Amendment claim failed and that the officers were entitled to summary judgment. This appeal followed.

## II.

On appeal (and now represented), Goodman argues that his two verified complaints were affidavits for summary judgment purposes which created genuine disputes of material fact as to his excessive force claim. Goodman also argues that "summary judgment was premature in light of his pending discovery requests." Opening Br. at 17. We agree on both fronts.

We review the district court's grant of summary judgment *de novo*, "using the same standard applied by the district court." *Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)). "In doing so, we recognize that a court should grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks and alteration omitted). In contrast, we afford district courts wide latitude over matters related to discovery, *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284,

8

290 (4th Cir. 2002), and review the decision to award summary judgment while discovery requests are still pending for abuse of discretion, *see McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483–84 (4th Cir. 2014).

## A.

We first consider whether the district court erred in disregarding Goodman's verified complaints and conclude that it did. "As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, it is well established that "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Id.* (citing *Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir. 1979) (per curiam)); *see also World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 516 (4th Cir. 2015) (same). Here, Goodman's first two complaints fit the bill: they were verified, and they contain detailed accounts of the incident based on his personal knowledge. The district court therefore erred in not considering the verified complaints.

The officers—whose briefing on appeal is entirely unresponsive to Goodman's argument that his verified complaints create genuine issues of material fact—offer no reason why we should not treat Goodman's original and first amended complaints as

affidavits for summary judgment purposes.[7] But Goodman, to his credit, raises a possible wrinkle.

Ordinarily, an amended complaint supersedes those that came before it. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). Goodman's second amended complaint—the operative complaint here, which superseded the original and first amended complaints—was *not* verified. That raises the question: should a verified complaint be considered an affidavit for summary judgment purposes where, as here, that complaint has been superseded by a later, amended complaint?

We have not directly addressed this question in a prior case, but we are persuaded to adopt the reasoning of the Seventh Circuit's decision in *Beal v. Beller*, 847 F.3d 897 (7th Cir. 2017), wherein it considered the *evidentiary* value of a verified complaint that had been superseded for *pleading* purposes by an amended verified complaint. In that case, plaintiff Charles Beal, Jr., alleged that police officers subjected him to an unjustified stop-and-frisk in violation of the Fourth Amendment. *Id.* at 899. The district court granted summary judgment to the officers after finding that the tip they acted on was not anonymous. *Id.* Stop-and-frisks that result from anonymous tips are harder to justify than those that result from a tip from a known informant, *id.* at 900–01, so whether the informant was known was key to the analysis.

---

[7] "[S]uch an outright failure . . . would ordinarily result in waiver," *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016), though we have the discretion to overlook the officers' "inattention," *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013).

10

Importantly, while Beal's original verified complaint alleged that the officers told him their tip was anonymous, his amended verified complaint did not. *Id.* at 901. The Seventh Circuit held it was appropriate to consider Beal's original, verified complaint as evidence—including the key allegation—even though it had been superseded as a pleading, because a verified complaint contains "factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion." *Id.* (quoting *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996)). In other words, while the mere assertions of an unverified pleading fall "out of the picture" when replaced by those of another complaint, a superseded *verified* complaint still puts forward live factual allegations with evidentiary value. *Id.* Thus, the Seventh Circuit concluded, a "verified complaint does not lose its character as the equivalent of an affidavit just because a later, amended complaint, is filed." *Id.*

Other circuits agree. The Ninth Circuit recently adopted *Beal*'s rule. *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 532 (9th Cir. 2018) (agreeing that an "original complaint 'does not lose its character as the equivalent of an affidavit just because a later, amended complaint, is filed'" (quoting *Beal*, 847 F.3d at 901)). And the Eight Circuit has long treated verified complaints as affidavits at the summary judgment stage, even when they are followed by amended complaints. For example, in *Hartsfield v. Colburn*, a pretrial detainee sued several defendants for deliberate indifference to his medical needs. 371 F.3d 454, 455 (8th Cir. 2004). On appeal, the plaintiff argued that the district court erred in granting summary judgment to the defendants and specifically by "not considering his verified original and amended complaints as affidavits." *Id.* The Eighth Circuit agreed. *Id.* at 456.

Implicit in its decision to recognize his original complaint as an affidavit was an understanding that a later filed complaint does not strip a verified complaint of its value as an affidavit.[8]

We agree with the Seventh, Eighth, and Ninth Circuits and hold that an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage. We conclude that the district court erred in disregarding the evidentiary value of Goodman's original and first amended complaints, which were verified and based on Goodman's personal knowledge, and were therefore the equivalent of opposing affidavits.

This leaves the question of relief. Goodman asks us to reverse the district court's grant of summary judgment and remand for pretrial discovery and trial. Reversal would be appropriate only if, in addition to concluding that the district court *procedurally* erred in overlooking the verified complaints, we also concluded that those complaints placed material facts in dispute, thereby making summary judgment inappropriate as a *substantive* matter. But because the district court did not consider Goodman's complaints, it has not yet had a chance to weigh the complete record at summary judgment. We think it prudent to vacate and remand for the district court to conduct this analysis in the first instance.

---

[8] The Fifth Circuit appears to have taken a slightly different approach, allowing superseded verified complaints to function as summary judgment evidence only if "the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Even under this more stringent standard, Goodman's verified complaints would be proper summary judgment evidence as his second amended complaint refers to his previous complaints and prays for them to be considered alongside his second amended complaint.

B.

Finally, we turn to Goodman's unresolved discovery requests. As discussed above, Goodman filed repeated discovery requests, which continued through the summary judgment stage. In Goodman's written opposition to Defendants' motion, he asked the district court to delay ruling on their motion until Goodman could review evidence including digital photographs of his injuries, his medical records, and notes taken regarding the incident. He also requested that the district court issue a subpoena to Chesapeake Correctional Center and another prison for his medical records. In its summary judgment decision, the district court denied Goodman's motion for subpoenas as moot but did not otherwise address his outstanding discovery requests. On appeal, Goodman contends that the district court abused its discretion by granting summary judgment to the officers before he had the opportunity to conduct sufficient discovery. We agree.

Rule 56 permits a party to file a motion for summary judgment "any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). However, "summary judgment should only be granted 'after adequate time for discovery,'" *McCray*, 741 F.3d at 483 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), and should be denied when "outstanding discovery requests on material issues exist," *Raynor v. Pugh*, 817 F.3d 123, 130 n.5 (4th Cir. 2016). This is because "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray*, 741 F.3d at 483. Accordingly, we have not hesitated to vacate a grant of summary judgment issued before adequate discovery has occurred. *See, e.g.*, *Ingle v. Yelton*, 439 F.3d 191, 193, 196–

13

97 (4th Cir. 2006) (vacating grant of summary judgment against mother who sought to discover if videotape existed of her son's fatal encounter with the police).

Here, summary judgment was premature because outstanding discovery requests existed on material issues. Goodman sought to discover photographs, records, reports, and eyewitness testimony material to his Eighth Amendment claim. For instance, Goodman contends that undiscovered photos and medical records exist showing he sustained multiple serious injuries, including an injury to his hand requiring surgery. Such evidence is material to an Eighth Amendment claim because evidence that Goodman suffered substantial injury could suggest that the officers applied serious and unnecessary force, key components of an Eighth Amendment excessive force inquiry. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam).

In response, the officers offer two counterarguments, neither of which is persuasive.[9] First, the officers argue that Goodman failed to properly alert the district court—either through a formal Rule 56(d) affidavit, or the equivalent thereof—that further discovery was needed before a decision on summary judgment was made.[10] But "[w]e have not insisted on an affidavit in technical accordance with Rule 56(d) 'if the nonmoving party

---

[9] Indeed, the officers may have abandoned these arguments. In a letter to the Court following oral argument, they appear to concede that additional discovery would be necessary if we conclude (as we do) that the district court erred in granting their motion for summary judgment.

[10] Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

14

has adequately informed the district court that the motion is pre-mature and that more discovery is necessary.'" *Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). "This is especially true where . . . the non-moving party is proceeding pro se." *Id.* Here, Goodman—who proceeded *pro se* before the district court—adequately informed the district court that the officers' motion for summary judgment was premature. The district court was put on notice by Goodman's repeated filings seeking discovery and, in particular, by his opposition to summary judgment, which asked the court to delay ruling until he could conduct discovery and contained a motion for the court to subpoena his medical records.

Second, the officers argue that summary judgment was not premature because the evidence Goodman sought to discover could not create a genuine issue of material fact. To be sure, we have held that "a court may deny a Rule 56(d) motion 'when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.'" *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 250 (4th Cir. 2018) (quoting *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014)). However, because the district court did not address the majority of Goodman's pending discovery requests and did not consider the officers' summary judgment motion on a properly constituted record, we have no way of knowing whether the court would have found that the sought-after information created a genuine dispute of material fact. We decline to decide in the first instance whether the requested materials would have created jury questions.

We therefore remand for the district court to consider Goodman's discovery requests alongside his verified complaints and the rest of the record evidence. As Goodman's discovery requests are scattered throughout the record and can be difficult to follow, he may wish to seek leave of the district court to file a new master discovery motion setting forth all matters he requests to discover and from whom he seeks that discovery.

## III.

We conclude that the district court erred in granting summary judgment to the officers without considering Goodman's verified complaints and abused its discretion in granting summary judgment before resolving Goodman's repeated discovery requests. On remand, the district court should determine what, if any, additional discovery is appropriate. It should then consider afresh the officers' summary judgment motion on the full record, including Goodman's verified complaints.

*VACATED AND REMANDED*